JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KATHERINE BRESLIN

### DEFENDANTS

B LAB COMPANY

**(b)** County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Chester
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen, Esquire
Console Mattiacci Law, LLC 1525 Locust Street 9th Floor
Philadelphia, PA 19102    215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq. ("Title VII"); 42 U.S.C. §12101, et seq. ("ADA"); 29 U.S.C. §2601, et seq. ("FMLA"); 43 P.S. §951, et seq. ("PHRA"); Phila. Code §9-1101, et seq. ("PFPO").

Brief description of cause:
Plaintiff was terminated from medical leave after being subjected to a hostile work environment.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
October 22, 2021

SIGNATURE OF ATTORNEY OF RECORD
*Kather C. Oeltjen*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Bala Cynwyd, PA _____

Address of Defendant: _____ 15 Waterloo Avenue, Berwyn, PA _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/22/2021 ___ /s/ Katherine C. Oeltjen ___ 318037

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Katherine C. Oeltjen, Esquire , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 10/22/2021 ___ /s/ Katherine C. Oeltjen ___ 318037

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| KATHERINE BRESLIN | : | CIVIL ACTION |
| v.   Plaintiff, | : | |
| B LAB COMPANY | : | |
| Defendant. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                     (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( X )

---

| | | |
|---|---|---|
| 10/22/2021 | *Katherin C. Oeltjen* | Plaintiff, Katherine Breslin |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2859 | oeltjen@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KATHERINE BRESLIN,**<br>**Bala Cynwyd, Pennsylvania**<br><br>                    **Plaintiff,**<br><br>      **v.**<br><br>**B LAB COMPANY,**<br>**15 Waterloo Avenue**<br>**Berwyn, Pennsylvania**<br><br>                    **Defendant.** | **CIVIL ACTION NO.**<br><br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

### I.    INTRODUCTION

Katherine Breslin ("Plaintiff"), an experienced attorney working within the non-profit sector, was terminated from her position as General Counsel without warning while on medical leave for emotional distress caused by a sex-based and retaliatory hostile work environment within Defendant, B Lab Company's ("Defendant"), organization. Defendant purports to identify and certify for-profit companies that meet a series of standards established by Defendant, including in connection with requiring non-discriminatory and non-retaliatory employment practices of the companies it designates as "Certified B Corporations." Yet, when Plaintiff complained internally of discrimination, she was subjected to a hostile work environment and terminated. Plaintiff now brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"); the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA"); the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"); the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"); and the Philadelphia Fair Practices Ordinance, Phila. Code §9-1101, *et seq.* ("PFPO").

## II.   PARTIES

1.      Plaintiff is an individual and citizen of Pennsylvania. She resides in Bala Cynwyd, Pennsylvania.

2.      Defendant B Lab Company is a Pennsylvania corporation with a principal place of business located at 15 Waterloo Avenue, Berwyn, Pennsylvania 19312.

3.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania, including without limitation, within and throughout the City of Philadelphia.

4.      At all times material hereto, Plaintiff worked for Defendant out of its Berwyn headquarters, its Ten Penn Center, Philadelphia, PA office, or remotely from her home in Bala Cynwyd.

5.      At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

6.      At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

7.      At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes that form the basis of this matter.

8.      Defendant is a covered employer within the meaning of the statutes that form the basis of this matter.

**III.     JURISDICTION AND VENUE**

9.     The causes of action which form the basis of this matter arise under Title VII, the ADA, the FMLA, the PHRA, and the PFPO.

10.     The District Court has jurisdiction over Count I (Title VII), Count II (ADA), and Count III (FMLA) pursuant to and 28 U.S.C. §1331.

11.     The District Court has jurisdiction over Count IV (PHRA) and Count V (PFPO) pursuant to 28 U.S.C. §1367.

12.     Venue is proper in this District Court under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to these claims occurred within this District.

13.     On or about October 12, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission "EEOC" (No. 530-2021-00196) complaining of the acts of discrimination and retaliation alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

14.     On or about July 27, 2021, the EEOC issued Plaintiff a Notice of Right to Sue. Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

15.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

16.    Plaintiff was hired on or about May 17, 2019, as General Counsel for Defendant. Plaintiff's official "start date" was June 17, 2019.

17.    Defendant is a non-profit, Section 501(c)(3) organization that has created a certification for, and awards a certification to, for-profit organizations for meeting standards relating to sustainability, accountability, transparency and performance, including in connection with employment practices.

18.    Plaintiff reported to Susan Cori ("Cori") (female), Chief Operating Officer ("COO").

19.    Cori reported to Andrew Kassoy ("Kassoy") (male), Co-Founder and CEO of "B Lab Global," a division of Defendant.

20.    Beginning in December 2019, Cori began reporting to Vale Jokisch ("Jokisch") (female), Executive Director of Defendant's People & Operations.

21.    Almost immediately after Plaintiff began working for Defendant, Barton Houlihan ("Houlihan") (male), Co-Founder of B Lab, engaged in physical touching of Plaintiff without her consent in an aggressive and domineering manner.

22.    Houlihan jabbed Plaintiff with his fingers to get her to maintain eye contact rather than take notes during a meeting.

23.    Houlihan poked Plaintiff on at least one occasion in the kitchen of Defendant's Berwyn location.

24.    Houlihan touched the small of Plaintiff's back without permission to "guide" her out of a meeting.

25.     Houlihan did not respect Plaintiff's personal space and sat uncomfortably close to her in meetings.

26.     At the same time, Jay Coen Gilbert ("Coen Gilbert") (male), Co-Founder of B Lab, subjected Plaintiff to discriminatory and hostile treatment including by way of refusing to acknowledge Plaintiff when she spoke to him directly, assigning her lengthy and unnecessary work assignments in direct contrast to Cori's wishes, and ignoring her requests for information that she needed to perform her assigned responsibilities for Defendant.

27.     When Coen Gilbert did acknowledge Plaintiff, he did so in a derisive manner.

28.     Coen Gilbert also interfered with and removed personal property from Plaintiff's desk in the office without her permission.

29.     Plaintiff did not observe Houlihan and Coen Gilbert treat male employees in the same manner that they treated her.

30.     On or about October 9, 2019, Plaintiff complained of sex discrimination to Cori during an in-person, off-site meeting.

31.     The same day, Cori called Plaintiff in the evening to let her know that she had spoken to Jokisch and Olivia Lee ("Lee") (female), HR Director, and reported her complaint of discrimination.

32.     Cori also told Plaintiff that because of the treatment she had been subjected to, Plaintiff could work remotely or wherever she felt comfortable moving forward (at home, in the Berwyn office, or in the Philadelphia office).

33.     In or around October 11, 2019, Plaintiff complained of sex discrimination to Jokisch. Plaintiff asked Jokisch to move her desk in the office to a location further away from Coen Gilbert since, at the time, she was assigned to a workspace directly across from him.

34.     Between October 2019 and January 2020, Plaintiff frequently worked from home in order to avoid the sex discriminatory and harassing conduct to which she was being subjected, including inappropriate and repeated physical touching by Houlihan and demeaning behavior on the part of Coen Gilbert.

35.     Plaintiff continued to perform all aspects of her job in a proficient manner.

36.     During the period of October 2019 through January 2020, Houlihan refused to provide Plaintiff with the information that she needed and asked for in order to perform her job duties on a range of matters.

37.     Cori was aware of Houlihan's conduct.

38.     After Plaintiff complained of sex discrimination to her, Cori subjected Plaintiff to the following discriminatory and retaliatory conduct, without limitation:

   a.  Cori expressed anger to Plaintiff when she worked from home (per Defendant's instruction) or the Philadelphia office despite her knowledge that Plaintiff had permission to work in any location, including from home. Cori also required Plaintiff to appear in person for certain meetings despite not requiring anyone else to do the same;

   b.  Cori, who is not an attorney, undermined Plaintiff's legal advice and efforts to provide legal services to the company;

   c.  Cori excluded Plaintiff from her access to strategic discussions and meetings;

   d.  Cori, without any basis, accused Plaintiff of "lying" when she worked from home one day instead of the Berwyn office due to illness;

   e.  Cori expressed anger to Plaintiff when she did not immediately answer a late-night text about a non-work matter;

   f.  Cori made remarks that Plaintiff understood were intended to shame her for not having children; and,

   g.  Cori refused to speak to Plaintiff at the holiday party despite the fact she was Plaintiff's direct supervisor.

39.     In mid-December 2019, Cori began reporting to Jokisch.

40.     In or about late December 2019, Plaintiff complained to Jokisch of the retaliatory and discriminatory conduct described above and requested a change in reporting structure.

41.     Defendant did not grant Plaintiff's request for a change in reporting structure.

42.     Defendant did not conduct any investigation into Plaintiff's complaints of discrimination and retaliation.

43.     On or about February 7, 2020, Cori gave Plaintiff an unwarranted negative performance review. The "review" included false and inaccurate information about Plaintiff's performance.

44.     On or about February 10, 2020, Plaintiff provided Cori and Jokisch with details about the inaccuracies and unwarranted criticism contained within the performance review.

45.     On or about February 10, 2020, Plaintiff complained to Lee of on-going retaliation by Cori in writing via Defendant's "Slack" messaging system.

46.     Lee verbally acknowledged receipt of the complaint but took no further action.

47.     On or about February 14, 2020, Plaintiff met with Jokisch at an off-site location across the street from work to discuss Plaintiff's comments to Cori's review and to again discuss her request for a reporting change.

48.     Jokisch told Plaintiff her request was denied.

49.     On or about February 19, 2020, Plaintiff was called into a meeting with Cori, Jokisch, and Lee and told that she had "hurt [Cori's] feelings" and that she was setting a bad example. Plaintiff was otherwise told that Defendant would discuss her comments to her performance review later.

50.     After Cori and Jokisch left the meeting, Plaintiff asked Lee if she was aware that Houlihan had inappropriately touched her and that she had reported the touching to Cori and Jokisch.

51.     In response, Lee looked at Plaintiff and asked, "Katherine, why are you doing this?"

52.     Plaintiff continued to be subjected to discriminatory and retaliatory treatment, including by way of micromanagement and isolation.

53.     In or around June 22, 2020, Plaintiff learned that Cori and Lee, both members of the People and Operations team, had consulted with an outside attorney regarding an internal employment matter, instead of consulting with her, the General Counsel of B Lab.

54.     Defendant purposely excluded Plaintiff from the communication and made it difficult for her to perform her job duties.

55.     On or about July 16, 2020, Plaintiff had her Q2 performance review during which Cori again unjustly criticized her personality and job performance, including, without limitation, falsely stating that that she was a "reactive" person, that no one on her team at B Lab liked her, that she was not able to be trusted with sensitive information, and that she was not a good "business partner." The meeting concluded with Cori telling Plaintiff that she was required to re-write her job description for Q3.

56.     During multiple calls between July 18, 2020, and July 21, 2020, Plaintiff complained to Kassoy about the discriminatory and retaliatory conducted she had been subjected to. Kassoy implied that Plaintiff was not a "good fit."

57.     Plaintiff told Kassoy that she was working on a number of projects that required months of work and that, without regard to whether or not she was a "good fit," she intended to complete the projects on Defendant's behalf.

8

58.     During a conversation on or about July 18, 2020, Plaintiff expressly stated to Kassoy that she was "terrified" in making the discrimination complaints as she feared on-going retaliation.

59.     Plaintiff reminded/explained to Kassoy that her husband has a serious medical condition/disability, that they relied upon the medical benefits they received through Defendant for his well-being, and that she needed to keep working for Defendant in order to have access to affordable medications that her husband requires to remain alive.

60.     On or about July 21, 2020, Jokisch told Plaintiff that Defendant had consulted with an outside employment attorney after her February 2020 meeting with Jokisch, Cori, and Lee.

61.     During the call with Jokisch on or about July 21, 2020, Plaintiff complained to Defendant about on-going discriminatory and retaliatory treatment.

62.     Amid the treatment outlined above, without limitation, Plaintiff experienced serious emotional upset, requiring medical treatment for her disability.

63.     On or about July 24, 2020, at around 2:20pm, Plaintiff emailed Jokisch, Cori, and Lee requesting medical leave pursuant to the FMLA and Defendant's policies amid her disability in the form of mental health issues related to Defendant's illegal and inappropriate conduct. Plaintiff attached documentation from her physician to the email.

64.     Plaintiff's request for medical leave was also a request for a reasonable accommodation for her disability.

65.     Approximately one hour later, Plaintiff received an email from Jokisch which stated that it served as confirmation of her resignation. It further stated that "[n]otification of your intention to voluntarily separate from B Lab Company was received verbally by Andrew Kassoy on July 20th and by me on July 21st."

9

66.     Plaintiff never resigned.

67.     Jokisch's email contained false statements.

68.     Defendant falsely stated that Plaintiff had resigned from her position as General Counsel of B Lab.

69.     Plaintiff never resigned her employment nor did Defendant act as if she had until she requested a medical leave and/or an accommodation for her disability in the form of medical leave.

70.     Plaintiff was very upset by Jokisch's false statements, and the de facto termination of her employment contained within the July 24, 2020, email.

71.     That same day, Plaintiff responded to Jokisch via email stating that she had not, at any time, resigned. Plaintiff complained that Jokisch's July 24th email was further retaliation for her complaints of sex discrimination.

72.     On or about July 24, 2020, Defendant acknowledged Plaintiff had never resigned by approving her for FMLA leave for her disability.

73.     On or about September 30, 2020, while on medical leave for her disability, Defendant terminated Plaintiff's employment.

74.     Plaintiff's termination was effective immediately.

75.     The only reason given for Plaintiff's termination was "I am writing to notify you that B Lab has eliminated the General Counsel position. The organization is undergoing 2021 strategic planning, including implementing structural and resource shifts. We do not have plans to backfill this position and will outsource as needed to external counsel."

76.     Upon information and belief, Defendant has offered different reasons for Plaintiff's termination to its employees, including by way of defamatory language indicating that Plaintiff had not performed her job competently.

77.     Defendant's stated reason for Plaintiff's termination is pretextual.

78.     Defendant has hired internal counsel and has not, in fact, fully outsourced legal services to external counsel.

79.     Plaintiff's sex was a motivating and/or determinative factor in connection with Defendant's discriminatory and retaliatory treatment of Plaintiff, including without limitation in connection with subjecting Plaintiff to a hostile work environment and her termination.

80.     The discriminatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

81.     Plaintiff's complaining of sex discrimination was a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff including without limitation in connection with subjecting her to a hostile work environment and her termination.

82.     Plaintiff's disability, including her record of disability and Defendant's regarding her as having a disability, as well as her association with her husband, who also has a disability and who Defendant regarded as having a disability, was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Plaintiff, including in connection with her termination, without limitation.

83.     At all times material hereto, Plaintiff was able to perform the essential functions of her job with or without a reasonable accommodation.

11

84.    Plaintiff's requests for leave and/or for reasonable accommodations were motivating and/or determinative factor(s) in Defendant's discriminatory and retaliatory treatment of Plaintiff, including in connection with her termination, without limitation.

85.    Defendant failed to prevent or address the discriminatory, harassing, and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory, harassing, and retaliatory conduct.

86.    As a direct and proximate result of Defendant's discriminatory, harassing, and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

87.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, harassing, and retaliatory acts unless and until this Court grants the relief requested herein.

88.    No previous application has been made for the relief requested herein.

## COUNT I – TITLE VII

89.    Plaintiff incorporates by reference each of the preceding paragraphs as if each were set forth herein in its entirety.

90.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

91.    Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

12

92.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

93.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's violation of Title VII unless this Court grants the relief requested herein.

## COUNT II – ADA

94.     Plaintiff incorporates by reference each of the preceding paragraphs as if each were set forth herein in its entirety.

95.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the ADA.

96.     Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

97.     As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

98.     Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT III – FMLA

99.     Plaintiff incorporates by reference each of the preceding paragraphs as if each were set forth herein in its entirety.

100.   By committing the foregoing acts against Plaintiff, Defendant has violated the FMLA.

101.   Defendant's conduct was retaliatory and interfered with her rights under the FMLA.

13

102.   Said violations were willful, not in good faith, and Defendant did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

103.   The imposition of liquidated damages is warranted.

104.   As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

105.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's violations of the FMLA unless this Court grants the relief requested herein.

**COUNT IV – PHRA**

106.   Plaintiff incorporates by reference each of the preceding paragraphs as if each were set forth herein in its entirety.

107.   By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PHRA.

108.   Said violations were intentional and willful.

109.   As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

110.   Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

**COUNT V – PFPO**

111.   Plaintiff incorporates by reference each of the preceding paragraphs as if each were set forth herein in its entirety.

112.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PFPO.

113.    Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights, and were especially egregious, warranting the imposition of punitive damages.

114.    As a direct and proximate result of Defendant's violation of the PFPO, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

115.    Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

116.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a.      Declaring the acts and practices complained of herein to be in violation of Title VII;

b.      Declaring the acts and practices complained of herein to be in violation of the ADA;

c.      Declaring the acts and practices complained of herein to be in violation of the FMLA;

d.      Declaring the acts and practices complained of herein to be in violation of the PHRA;

e.      Declaring the acts and practices complained of herein to be in violation of the PFPO;

f.      Enjoining and permanently restraining the violations alleged herein;

15

g.      Entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

h.      Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity, and benefits, which Plaintiff has suffered as a result of Defendant's improper conduct;

i.      Awarding compensatory damages to Plaintiff for past pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered as a result of Defendant's improper conduct;

j.      Awarding liquidated damages to Plaintiff;

k.      Awarding punitive damages to Plaintiff;

l.      Awarding Plaintiff other such damages as are appropriate under Title VII, the ADA, the FMLA, the PHRA, the PFPO;

m.      Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

n.      Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


                              **CONSOLE MATTIACI LAW LLC**

Dated: October 22, 2021           By:     */s/ Katherine C. Oeltjen*_____
                                          Katherine C. Oeltjen, Esquire (318037)
                                          1525 Locust Street, 9th Floor
                                          Philadelphia, PA 19102
                                          (215) 545-7676
                                          (215) 565-2852 (fax)
                                          *Attorneys for Plaintiff Katherine Breslin*

# EXHIBIT 1

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | AGENCY<br>Ｑ FEPA<br>X EEOC | CHARGE NUMBER |
|---|---|---|

STATE OR LOCAL AGENCY: **PHRC**

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Katherine Breslin** | TELEPHONE NUMBER *(Include Area Code)*<br>REDACTED |
|---|---|

| STREET ADDRESS<br>REDACTED | CITY, STATE AND ZIP<br>**Bala Cynwyd, PA 19004** | DATE OF BIRTH<br>REDACTED |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**B Lab Company** | NUMBER OF EMPLOYEES, MEMBERS<br>**Approx. 100** | TELEPHONE (Include Area Code)<br>**610-293-0299** |
|---|---|---|

| STREET ADDRESS<br>**15 Waterloo Avenue** | CITY, STATE AND ZIP<br>**Berwyn, PA 19312** | COUNTY<br>**Chester** |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Race   Color  **X Sex**   Religion   National Origin<br>**X  Retaliation**   Age   **X Disability**   Other | DATE DISCRIMINATION TOOK PLACE<br><br>**Latest Date:**<br>**9/30/2020** |
|---|---|

## THE PARTICULARS ARE:

### 1. Background

I was hired by B Lab Company ("B Lab" or "Respondent") on or about May 17, 2019, with a start date of June 17, 2019 as General Counsel. B Lab is a non-profit, Code Section 501(c)(3) organization that has created a certification for, and awards a certification to, for-profit organizations for meeting standards relating to sustainability, accountability, transparency and performance. Upon my hire, I reported to Susan Cori ("Cori"). (female), Chief Operating Officer. Until December 2019, Cori reported to Andrew Kassoy ("Kassoy") (male), one of the co-founders and CEO of "B Lab Global," a division of B Lab. Cori now reports to Vale Jokisch ("Jokisch") (female), the Executive Director of B Lab's People & Operations division. At all material times, I performed my duties in a consistently exemplary manner, including by way of a number of activities intended to ensure B Lab's compliance with the various state and federal statutes and regulations related to its 501 (c) (3) status.

| X I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | |
| Date:  10/12/20   Charging Party *(Signature)*  *Katherine Morgan Breslin* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

2. **<u>Harm Summary</u>**

A. I believe that Respondent has discriminated against me because of my sex and disability and retaliated against me for complaining of sex discrimination and taking a medical leave for my disability, including by way of subjecting me to a hostile work environment and terminating me while on medical leave.  Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following:

1.  Almost immediately after I began working for Respondent, Barton Houlihan ("Houlihan"), (male), Co-Founder of B Lab engaged in physical touching of me without my consent in an aggressive, domineering manner, including jabbing me with his fingers to get me to maintain eye contact rather than take notes, poking at me in the kitchen while heating up my food to remark on my use of hot sauce, touching the small of my back to guide me out of a meeting, and sitting aggressively close in meetings.

2.  At the same time, Jay Coen Gilbert ("Coen Gilbert") (male), another Co-Founder of B Lab, subjected me to discriminatory and hostile treatment including by way of refusing to acknowledge me when I spoke to him directly, assigning me lengthy and unnecessary work assignments in direct contrast to Cori's wishes, ignoring my requests for information that I needed in order to perform my assigned responsibilities for Respondent and, when he did decide to acknowledge me, doing so in an aggressive and derisive manner. Coen Gilbert also interfered with and removed personal property from my desk in the office without my permission.

3.  I did not observe Houlihan and Coen Gilbert treat male employees in the same manner that they treated me.

4.  On or about October 9, 2019, I complained of sex discrimination to Cori during an in-person, off-site meeting at a coffee house.

5.  The same day, Cori called me in the evening to let me know that she had spoken to Jokisch and Olivia Lee ("Lee") (female), HR Director and reported my complaint of discrimination. Cori also told me that amid the treatment I had been subjected to, I could work remotely or in Respondent's Berwyn or Philadelphia offices and that I could work wherever I felt comfortable moving forward (at home, in the Berwyn office, or in the Philadelphia office).

6.  In or around October 11, 2019, I complained of sex discrimination to Jokish. I asked Jokish to move my desk in the office to a location further away from Coen Gilbert. At the time, I was assigned to a workspace directly across from him.

7.  Between October 2019 and January 2020, I frequently worked from home in order to avoid the sex discriminatory and harassing conduct to which I was being subjected, including inappropriate and repeated physical touching by Barton Houlihan, and the demeaning behavior on the part of Coen Gilbert.

**EEOC Charge of Discrimination**
Page **3** of **6**

8. I continued to perform all aspects of my job in a proficient manner.

9. During the period of October 2019 through January 2020, Houlihan continued to refuse to provide me with information that I needed and asked for in order to perform my job duties on a range of matters.

10. Cori was aware of Houlihan's conduct.

11. After I complained of sex discrimination to her, Cori subjected me to the following discriminatory and retaliatory conduct, without limitation:

    a. Cori expressed anger to me when I worked from home (per Respondent's instruction) or the Philadelphia office despite her knowledge that I had permission to work in any location, including from home. Cori also required me to appear in person for certain meetings despite not requiring anyone else to do the same;

    b. Cori, who is not an attorney, undermined my legal advice and efforts to provide legal services to the company;

    c. Cori excluded me from my access to strategic discussions and meetings in an effort to impede me from performing my job;

    d. Cori, without any basis, accused me of "lying" when I worked from home one day instead of the Berwyn office due to illness;

    e. Cori expressed anger to me when I did not immediately answer a late-night text about a non-work matter;

    f. Cori made remarks that I understood were intended to shame me for not having children; and,

    g. Cori refused to speak to me at our holiday party despite the fact she was my direct supervisor.

12. In mid-December 2019, Cori began reporting to Jokisch.

13. In or about late December, 2019 I complained to Jokish of the retaliatory and discriminatory conduct described above and requested a change in reporting structure.

14. Respondent did not grant my request for a change in reporting structure.

15. Respondent did not conduct any investigation into my complaints of discrimination and retaliation.

16. On or about February 7, 2020, Cori gave me an unwarranted negative performance review. The "review" included false and inaccurate information about my performance.

**EEOC Charge of Discrimination**
Page **4** of **6**

17. On or about February 10, 2020, I provided Cori and Jokisch with details about the inaccuracies and unwarranted criticism contained within the negative performance review.

18. On or about February 10, 2020, I complained to Lee of on-going retaliation by Cori in writing via Respondent's "Slack" messaging system.

19. Lee verbally acknowledged receipt of the claim but took no further action.

20. On or about February 14, 2020, I met with Jokisch at an off-site location across the street from work to discuss my comments to Cori's review and to again discuss my request for a reporting change. Jokisch told me my request was denied.

21. On or about February 19 2020 I was called into a meeting with Cori, Jokisch, and Lee and told that I had "hurt [Cori's] feelings" and that I was setting a bad example. I was otherwise told that Respondent would discuss my comments to my performance review at a later date.

22. After Cori and Jokisch left the meeting, I asked Lee if she was aware that Houlihan had inappropriately touched me, and that I had reported it to Cori and Jokisch.

23. In response, Lee looked at me and asked "Katherine, why are you doing this?"

24. In late February 2020, I completed a Q1 performance review under Respondent's "new" performance review system.

25. I continued to be subjected to discriminatory and retaliatory treatment, including by way of micromanagement and isolation.

26. In or around June 22, 2020, I learned that Cori and Lee, both members of the People and Operations team, had consulted with an outside attorney regarding an internal employment matter, instead of consulting with me, the General Counsel of B Lab.

27. Respondent purposely excluded me from the communication and made it difficult for me to perform my job duties.

28. On or about July 16, 2020, I had my Q2 performance review during which Cori again unjustly criticized my personality and job performance, including without limitation falsely stating that that I am a "reactive" person, that no one on my team at B Lab likes me, that I am not able to trusted with sensitive information, and that I am not a good "business partner." The meeting concluded with Cori telling me that I was required to re-write my job description for Q3.

29. During multiple calls between July 18, 2020 and July 21, 2020, I complained to Kassoy about the discriminatory and retaliatory conducted I had been subjected to. Kassoy implied that I was not a "good fit." I told Kassoy that I was working on a number of projects that required months of work and that, without regard to whether or not I was a "good fit," I intended to complete the projects on Respondent's behalf.

**EEOC Charge of Discrimination**
Page **5** of **6**

30. During a conversation on or about July 18, 2020, I expressly stated to Kassoy that I was "terrified" in making the discrimination complaints as I feared on-going retaliation. I reminded/explained to Kassoy that my husband has a serious medical condition/disability and that we relied upon the medical benefits we through Respondent, I needed to keep working for Respondent in order to have access to affordable medications that my husband requires to remain alive.

31. On or about July 21, 2020, Jokisch told me that Respondent had consulted with an outside employment attorney after my February 2020 meeting with her, Cori and Lee.

32. During the call with Jokisch on or about July 21, 2020, I complained to Respondent about on-going discriminatory and retaliatory treatment.

33. Amid the treatment outlined above, without limitation, I experienced serious emotional upset, requiring medical treatment amid a disability.

34. On or about July 24, 2020, at around 2:20pm, I emailed Jokisch, Cori, and Lee requesting medical leave pursuant to the Family and Medical Leave Act and Respondent's policies amid a disability in the form of mental health issues related to Respondent's illegal and inappropriate conduct.  I attached appropriate documentation from my physician.

35. My request for medical leave was also a request for a reasonable accommodation for my disability.

36. Approximately one hour later, I received an email from Jokisch which stated that it served as confirmation of my resignation.  It further stated that "[n]otification of your intention to voluntarily separate from B Lab Company was received verbally by Andrew Kassoy on July 20[th] and by me on July 21[st]."

37. In retaliation for complaining of sex discrimination to Kassoy and seeking a reasonable accommodation in the form of  medial leave for a disability, Respondent falsely stated that I had resigned from my position as General Counsel of B Lab.

38. I never resigned my employment.

39. On or about July 24, 2020, I responded to Jokisch via email stating that I had not, at any time, resigned. I complained that Respondent's actions to falsely state that I had resigned was further retaliation for my earlier complaints of sex discrimination.

40. On or about July 24, 2020, Respondent acknowledged I had never resigned by approving me for FMLA leave for my disability.

41. On or about September 30, 2020, while on medical leave for my disability, Respondent terminated my employment.

42. My termination was effective immediately.

## EEOC Charge of Discrimination
### Page **6** of **6**

43. The only reason given for my termination was "I am writing to notify you that B Lab has eliminated the General Counsel position. The organization is undergoing 2021 strategic planning, including implementing structural and resource shifts. We do not have plans to backfill this position and will outsource as needed to external counsel."

44. Upon information and belief, Respondent has offered different reasons for my termination to its employees, including by way of defamatory language indicating that I had not performed my job competently.

45. To the best of my knowledge, to date, Respondent has not investigated my complaints of sex discrimination and retaliation.

**B. <u>Respondent's Stated Reason</u>**

Respondent has not provided a legitimate, non-discriminatory reason for the discriminatory and retaliatory treatment to which I have been subjected, including, but not limited to, subjecting me to a hostile work environment. The stated reason for my termination is pre-textual.

**C. <u>Statutes and Bases of Allegations</u>**

I believe Respondent has discriminated against me because of my sex and disability and my association with my husband who has a disability and retaliated against me for complaining of sex discrimination and for requiring medical leave for a disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., the Pennsylvania Human Relations Act, as amended. 43. P.S. §951 *et seq.* ("PHRA") and the Philadelphia Fair Practices Ordinance.

# EXHIBIT 2

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Katherine Breslin** <br> REDACTED <br> **Bala Cynwyd, PA 19004** | From:  **Philadelphia District Office** <br> **801 Market Street** <br> **Suite 1000** <br> **Philadelphia, PA 19107** |

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| **530-2021-00196** | **Legal Unit,** <br> **Legal Technician** | **(267) 589-9700** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Dana Rhutter*

July 27, 2021

Enclosures(s)

**Dana R. Hutter,**
**Deputy Director**

*(Date Issued)*

cc:
**Olivia Lee**
**Director of People & Culture**
**B LAB**
**15 Waterloo Avenue**
**Berwyn, PA 19312**

**Oeltjen, Esq, Katherine C**
**1525 Locust Street**
**9th Floor**
**Philadelphia, PA 19102**